NOBLE *v.* STURM.

1. DAMAGES—FOREIGN CONTRACT—LAW OF CASE—LANDLORD AND
   TENANT—BREACH OF COVENANT TO PAY RENT.
   > In an action on a lease of premises in the city of Chicago,
   > Ill., the lease having been executed in Illinois, the law
   > of that State must govern.

2. SAME—LIQUIDATED DAMAGES—PENALTY—DISTINCTION.
   > A sum of money deposited by the lessees with the lessor
   > as a guaranty for the faithful performance of all the
   > covenants of the lease by said lessees, and, under the
   > terms of the lease, to be retained by the lessor as liqui-
   > dated damages in case of lessees' default in the per-
   > formance of any of the covenants of said lease, the least
   > as well as the most important, or the whole of them
   > together, must be regarded as a penalty and not liqui-
   > dated damages, and in an action for default in the pay-
   > ment of rent the trial court properly held that plaintiff
   > was entitled to recover the full amount of same, after
   > deducting the amount of said deposit.

3. SAME—ASCERTAINMENT OF DAMAGES.
   > Where the damages are not difficult of ascertainment, the
   > court is inclined to treat the stipulated sum as a penalty
   > and inquire into the actual damages.

4. LANDLORD AND TENANT—ABANDONMENT OF LEASED PREMISES—
   SURRENDER—LIABILITY FOR RENT.
   > An abandonment of leased premises without the consent of
   > the lessor is not the equivalent of a surrender of the
   > premises, and will not release the lessee from his obli-
   > gation to pay rent.

5. SAME—PROOF OF SURRENDER.
   > To show a surrender of a lease, a mutual agreement be-
   > tween the lessor and the original lessee that the lease is
   > terminated must be clearly proved, which surrender re-
   > leases the original tenant from further liability.

6. DAMAGES—JUDGMENT—MODIFICATION—INTEREST.
   > Where, under the terms of the lease, defendants were en-
   > titled to interest on the amount deposited by them as a

guaranty, and in computing same the trial court did not properly apply the rule stated in the case, resulting in too large a judgment for plaintiff, the same will be modified, and on failure of plaintiff to file remittitur new trial will be granted.

Error to Wayne; Mandell (Henry A.), J. Submitted April 23, 1920. (Docket No. 62.) Decided June 7, 1920.

Assumpsit by Marian H. Noble against Adolph E. Sturm on a lease. Judgment for plaintiff. Defendant brings error. Affirmed, conditionally.

*Behr & Coolidge*, for appellant.

*Clark, Emmons, Bryant, Klein & Brown*, for appellee.

STONE, J. This case has been brought here by the defendant to review a judgment for the plaintiff in the court below. The case was tried by the court without a jury, and the findings of fact and conclusions of law are herein set forth. The suit was brought upon a lease of certain premises in the city of Chicago, Illinois, entered into July 8, 1911, at Chicago, between the plaintiff as lessor, and the defendant Sturm and one J. D. Isaacs as lessees. Isaacs is now dead and Sturm is a resident of Detroit. The lease is known in the record as Exhibit "A." The original lease contains clauses 6, 7, 8 and 10, which are the basis of defendant's contentions in this suit, and are therefore here set forth verbatim:

"*Sixth.* The parties of the second part, having deposited with the party of the first part the sum of seven hundred and sixty-five ($765) dollars, it is agreed that said sum shall be held by the party of the first part to guarantee the faithful performance of all the covenants of this contract by the parties of the second part and upon default of the parties of

the second part, or either of them, in the performance of any of the covenants in this contract contained, such sum of money or so much thereof as then remains in the possession of the party of the first part shall be retained by the party of the first part and applied by her in full payment and liquidation of all damages which she may sustain by reason of such default and thereupon she shall be entitled to the possession of the said premises, and the parties of the second part shall have no further rights therein.

"*Seventh.* The party of the first part agrees to pay to the parties of the second part, or either of them, interest at the rate of five per cent. per annum upon the sum set out in the last preceding paragraph hereof, or so much thereof as may remain in the possession of the party of the first part until such default.

"*Eighth.* Should the parties of the second part faithfully perform all the covenants herein required of them the said sum of money so deposited with the party of the first part will be applied by the party of the first part in payment of the last six monthly installments of rent in the sum of one hundred twenty-seven dollars and fifty cents ($127.50) each that will become due on the first days of March, April, May, June, July and August, in the year 1916."

"*Tenth.* The parties of the second part agree to furnish at their own expense such heat as they may deem necessary and to pay the water tax upon said premises as the same becomes due and payable and agree to take reasonable and necessary precaution against freezing the water pipes and against permitting matter or materials to enter the drainage or waste pipes tending to obstruct, and will pay all damages or expenses incurred by such neglect and will clean the catch basin and furnace as often as necessary and allow no deposit of ashes or other rubbish in or upon said premises."

The findings of fact and conclusions of law of the trial court are as follows:

### "Findings of Fact.

"1. I find that on or about July 8, 1911, the plaintiff, Marian H. Noble, entered into a lease with the defendant, Adolph E. Sturm, and one J. D. Isaacs, who

is now dead, in the city of Chicago, Illinois, a true copy of which is annexed to the declaration in this case and marked Exhibit A.

"2. That said lease was, on March 28, 1912, extended by a written agreement, entered into by the same parties, from the date it would otherwise have expired, to wit, August 31, 1916, to and including the 31st day of August, 1919, a true copy of which extension agreement is annexed to the declaration filed in this case and marked Exhibit B.

"3. That thereafter, by proper assignment, the interest of the said lessees was transferred to one John A. Klawans, who subsequently transferred his interest to Harry S. Goldstein; that Goldstein thereafter transferred to the May Amusement Company, an Illinois corporation, and that it thereafter transferred to Bertha Evans, all of which assignments were consented to by the plaintiff in this case, and that none of said assignments released the defendants in this case from liability on said lease. That thereafter, without knowledge or consent of either of the parties to this case, a Mr. Myer went into possession of the property and paid rent thereon until August, 1916, since which time no rent has been received by the plaintiff for said premises.

"4. That all the assignees above named are financially irresponsible, and their whereabouts unknown, and that said premises were and ever since have been vacant and abandoned by the tenants named in said lease and their assignees since August, 1916. There is some testimony to the effect that the premises were occupied by one Myer, an assignee, in January, 1917, for a few days. There is no testimony that the abandonment was ever accepted by the plaintiff.

"5. That at the time said lease was executed, the lessees, Sturm and Isaacs, were young men, working on a salary, in Chicago, and had just enough money to install the equipment, required by the fourth clause of the lease, and put up the deposit of $765 required by the sixth clause of the lease. That the lease was drafted by Mr. Bither, of the firm of Bither & Goff, of Chicago, attorneys for the plaintiff. That the plaintiff has, at times, called the attention of prospective lessees to the premises and has diligently attempted to

secure prospects on behalf of the said lessees, for the same, but that her efforts to assist the lessees in subletting the premises have been without success.

"6. The premises are in character that of a moving picture theater; a small theater of three hundred (300) seats, such as is provided for by the lease. The decorations, lighting, ventilating, the sloping of the floor and the projecting room are those usually used for moving picture houses. There is a stage and the front is recessed back. The stage is in the north end of the building, and the floor slopes from the level of the street in front to a good three and one-half feet below the street level at the stage. The front of the building on the street is set back from the street line ten feet, with a projecting box for the cashier, and an entrance door on either side of that box.

"7. That Mr. Myer, the last assignee of this lease, has never turned the keys over to the plaintiff's agent, and left the city of Chicago in August, 1916. He has paid the rent in full for each month up to August, 1916, when he paid one hundred seven and 50/100 dollars ($107.50), leaving a balance due for August, 1916, rent of twenty ($20) dollars. Nothing has been paid since August, 1916, on account of the rent of this property, although there is some testimony that sometime after January 1, 1917, the theater was opened and operated for a few days by Mr. Myer. That no business has been conducted at the premises covered by said lease, No. 126 East Fifty-first street, Chicago, Illinois, since the first part of January, 1917, although the chairs and other theater equipment in the premises, installed in accordance with the fourth clause of the lease, still remain there, and that no affirmative steps have ever been taken by the plaintiff to terminate the lease.

"8. That the amount of the unpaid rent due on the lease up to the date this suit was commenced, is one thousand forty ($1,040) dollars, as detailed in plaintiff's bill of particulars, upon which sum this plaintiff would be entitled to interest at the rate of five per cent. (5%) on the respective amounts as they become due.

"9. By a proper notice, under his plea of the general issue, the defendant urges that the provision in

the sixth clause of the lease for the deposit of seven hundred sixty-five ($765) dollars is a provision for liquidated damages and that upon default, the plaintiff must accept that amount in full payment of all damages, which she sustains, and the defendant further claims, under his notice of setoff, the right to an affirmative recovery, because of the seventh clause of the lease, to interest on the seven hundred sixty-five ($765) dollars at five per cent. (5%) from the date of the deposit to the date of the alleged default, August, 1916, and interest on that amount at five per cent. (5%) to the date of trial; that the plaintiff in this case has never paid any interest on the seven hundred sixty-five ($765) dollars to the defendant in this case or to anyone else, as is provided in the seventh clause of the lease.

"10. I further find that the plaintiff, in commencing this suit, has commenced suit only for the rent which was due, as she legally might have done, from August, 1916, until the date of commencement of suit.

"11. The Illinois cases of *Hinde* v. *Mandansky*, 161 Ill. App. 216; *Kay Gee Amusement Co.* v. *Cave*, 177 Ill. App. 250; *West Side Auction House Co.* v. *Insurance Co.*, 186 Ill. 156 (57 N. E. 839) ; *Sexton* v. *Chicago Storage Co.*, 129 Ill. 318, 334 (21 N. E. 920) ; *Wilhelm* v. *Schmidt*, 84 Ill. 183; *Aldrich* v. *Dunham*, 16 Ill. 400; *North & South Rolling Stock Co.* v. *O'Hara*, 73 Ill. App. 691; *County of Mercer* v. *Iron Co.*, 115 Ill. App. 298; *Darst* v. *Bates,* 93 Ill. 493; *Archibald* v. *Argall*, 53 Ill. 307, were introduced in evidence.

"Conclusions of Law.

"1. That the lease in question, having been executed in Illinois and affecting Illinois property, the law of that State must govern.

"2. That the defendant in this case, by his assignees, defaulted on the lease in August, 1916, by nonpayment of rent.

"3. I am unable to agree with the defendant in his contention, and find that as a matter of law, the sixth clause of the lease was, under all the facts and circumstances of this case, a provision for security only, and not one for liquidated damages and that where damages exceed the amount of the security, as they do in this case, it amounts to a penalty and not liquidated

damages, and, therefore, that the plaintiff should be allowed to recover the full amount of one thousand forty ($1,040) dollars with interest at the rate of five per cent. (5%) upon the respective amounts as they become due.

"4. I also find that under the seventh clause of the said lease, the defendant would be entitled to interest at the rate of five per cent. (5%) per annum upon the sum of seven hundred sixty-five ($765) dollars, deposited by them from the date of the deposit to the date of default in the lease, which interest approximately equals the interest that would be due to the plaintiff and I have, therefore, deducted from the amount of rent which was due and payable at the time of the commencement of this suit, to wit: One thousand forty dollars ($1,040), the amount of the deposit, seven hundred sixty-five dollars ($765), and will, therefore, enter a judgment in favor of the plaintiff and against the defendant for the sum of two hundred seventy-five ($275) dollars."

Judgment for the plaintiff was entered upon these findings in the sum of $275 damages.

Counsel for appellant state in their brief that while defendant assigned error on a number of the findings of fact made by the court below, this assignment is now waived, and defendant relies upon the insufficiency of the facts as found to support the judgment rendered, as expressed in the assignments of error numbers 1 to 6, inclusive; and defendant urges:

(1) That the $765 deposited under the original lease is a full satisfaction, discharge and liquidation of plaintiff's claim.

(2) That under clause 7 of the original lease, defendant is entitled to an affirmative recovery of the interest at 5 per cent. per annum on said sum of $765, from July 8, 1911, to August 1, 1916, it appearing that no interest on the deposit has ever been paid.

In their reply brief appellant's counsel also say:

"Until the receipt of plaintiff's brief we assumed that the sole issue in this case was the question of whether the sixth clause of the lease was a provision

for liquidated damages, or for a penalty. No other issue was argued before the court below, and no other issue is suggested by the pleadings. No other issue is suggested in the court's findings of fact and conclusions of law."

It is also urged that the question of interest upon the deposit is open upon this record. Taking appellant's counsel at their word, we proceed to consider the questions involved, which we think are open upon this record. It will be noted that no amendments were proposed to the findings, as provided by the judicature act and by rule 45 of the circuit court.

1. Do the findings of fact support the conclusions of law in this case? We have spent much time in the examination of the Illinois cases cited by the court in its findings, and by counsel. Much carelessness is disclosed in the citation of authorities, and we have had difficulty in finding some of the cases which were wrongly cited, and some we are unable to find, which has added to the labor of the court.

Upon the subject of liquidated damages we find the authorities in Illinois (which we think are controlling here because the contract was made in Illinois, upon Illinois property, and was to be performed in that State), are as follows:

*Aldrich* v. *Dunham*, 16 Ill. 400, is cited but doubtless intended to be *Tiernan* v. *Hinman*, which appears at that page, and has to do with the question of stipulated damages and penalty:

"Where, by the terms of a contract a greater sum of money is to be paid, upon default in the payment of the lesser sum at a given time, both courts of law and equity will hold the provisions for the payment of the greater sum to be a penalty. And even where the parties stipulate for the payment of a sum certain on default of performance of an agreement, such stipulation will be treated as a penalty, if the damages are not difficult of ascertainment." Citing many cases in other jurisdictions.

*County of Mercer* v. *Iron Co.,* 115 Ill. App. 298. We quote from the opinion at page 301:

" 'The law relative to liquidated damages has always been in a state of great uncertainty. This has been occasioned by judges endeavoring to make better contracts for parties than they have made for themselves.' *Crisdee* v. *Bolton,* 3 Car. & P. 240.

"Courts have never hesitated to hold that where the amount to be paid was called in the agreement liquidated damages, it meant penalty, where it appeared that the stipulated sum was greatly in excess of the amount that would constitute just compensation. 'Actual compensation being the favorite as it is the fundamental principle of the law governing redress for civil injuries,' it is laid down by the textwriters on damages, that even though an exact and stipulated sum was agreed to be paid, if it was not based upon and substantially limited to just compensation, it would be treated as a penalty." Citing authorities.

*Iroquois Furnace Co.* v. *Wilkin Manfg. Co.,* 181 Ill. 582, 603 (54 N. E. 987). Treating the question of liquidated damages and penalty we read from the opinion as follows:

"Another rule of construction is that, where an agreement contains several stipulations of various degrees of importance, as to some of which the damages might be considered liquidated, whilst the damages for the nonperformance of the others are not measurable by any exact pecuniary standard, and a sum of money is made payable in gross for a breach of any of them, such sum is held to be a penalty only, and not liquidated damages." Citing authorities.

See, also, *Van Kennel* v. *Higley,* 172 Ill. App. 88, 92.

"Whether a deposit is liquidated damages or a penalty depends on the intention of the parties as disclosed by the situation and terms of the instrument, and it is not necessarily regarded as liquidated damages though expressly so stated. Where there is doubt as to whether a deposit is intended as a penalty or liquidated damages and the damages are easy of cal-

culation, the court is inclined to treat it as a penalty and inquire into the actual damages. In determining the intent of the parties courts must look to the entire instrument and give effect to every clause." *Kay Gee Amusement Co.* v. *Cave*, 177 Ill. App. 250.

"Courts lean to the construction which allows only loss actually sustained, but will consider the language used, the subject-matter of the contract, and endeavor to find the true intent of the parties and to do justice between them. The fact that the parties use the words 'liquidated damages,' is not always conclusive that such damages are intended. Where, from the nature of the contract and subject-matter, the damages cannot be calculated with certainty, the sum named for liquidated damages will usually be held such." *Hennessy* v. *Metzger*, 152 Ill. 505 (38 N. E. 1058).

*Westfall* v. *Albert*, 212 Ill. 68 (72 N. E. 4). This case treats of the penalty in a bond; and holds that where a bond for a specified amount is to be void if the obligor performs a certain act, otherwise to remain in full force, the court may look to the intent of the parties to determine whether the bond is a contract of indemnity or for the payment of a liquidated sum. If the purpose of the parties to the bond in fixing the amount of damages to be paid is merely to secure prompt performance of an agreement, the bond will be treated as a penalty only, and no more than actual damages are recoverable in case of a breach.

Upon the question of liquidated damages, see, also, *Consolidated Coal Co.* v. *Peers*, 150 Ill. 344 (37 N. E. 937). The holdings of the Illinois cases do not materially differ from our own. *Jaquith* v. *Hudson*, 5 Mich. 123; *Daily* v. *Litchfield*, 10 Mich. 29; *Davis* v. *Freeman*, 10 Mich. 188; *Calbeck* v. *Ford*, 140 Mich. 48; *Decker* v. *Pierce*, 191 Mich. 64, 70 *et seq.*; *Jones* v. *Stainton*, 200 Mich. 694, 703.

In *Daily* v. *Litchfield, supra,* it was held that:

"Where, by the terms of a contract, a sum is mentioned as 'liquidated damages' for the nonperformance of several distinct stipulations of very different degrees of importance, and this sum is to be payable equally on a failure to perform the least, as of that to perform the most important, or the whole of them together, it is in legal effect a penalty, and not stipulated damages; and the fixing of such a penalty by the contract is no objection to specific performance."

See, also, 8 R. C. L., title "Damages," §§ 110-120.

A careful reading of the sixth clause of the lease will disclose that the $765 was a guaranty for the faithful performance of *all* the covenants of the lease by the parties of the second part, and upon their default in the performance of *any* of the covenants in the contract contained, such sum should be retained by the party of the first part as liquidated damages.

Turning to paragraph 10 of the lease, it will be observed that the parties of the second part agreed to do a number of things, among which was, to pay the water tax upon said premises as same became due, and to take necessary precautions against freezing of water pipes, and against permitting matter or material to enter the drainage or waste pipes tending to obstruct, and agreed to pay *all damages or expenses* incurred by such neglect. Thus it will be seen that by the terms of the contract this sum mentioned as liquidated damages was for the nonperformance of several distinct stipulations of very different degrees of importance; and this sum was to be payable equally on a failure to perform the *least*, as well as the *most important, or the whole of them together.* Applying the familiar rule which obtains both in Illinois and Michigan, it must be held that said sum should be deemed to be a penalty instead of liquidated damages, and the trial court did not err in so holding; and there was no error in the finding that plaintiff was entitled to recover the full amount of rent, after deducting the

amount of said deposit. The damages were not diffi-cult of ascertainment, therefore a penalty.

2. In answer to the claim of the defendant that there had been a surrender or abandonment of the premises, we find the state of the Illinois authorities to be as follows:

"A lessee cannot surrender premises leased to him, before the expiration of the term, so as to absolve himself from the payment of rent thereafter, without the consent of the lessor; and the abandonment of the premises, with notice thereof to the lessor, will not exonerate the lessee thereafter from his obligation to pay rent, unless the lessor assents thereto." *Stobie* v. *Dills*, 62 Ill. 432.

"A tenant having entered is liable for all the rent as agreed, notwithstanding he has ceased to occupy, unless something has happened to put an end to the tenancy." *Orcutt* v. *Isham*, 70 Ill. App. 102.

"If a tenant retains possession of the leased prem-ises, either actual or constructive, he will be liable for the rent so long as his possession continues. * * *

"Before the tenant can defend against the payment of rent, he must abandon the premises. A retention of the keys of a rented building by the tenant is a constructive possession by him." *Burnham* v. *Martin*, 90 Ill. 438.

The court concludes the opinion as follows:

"This retention of the keys still gave appellant the constructive possession of the house, and precluded him from successfully defending against this rent."

"1. If a leasing has taken place the tenant has no right without cause to abandon the premises and re-fuse to pay the rent stipulated.

"2. If demised premises are improperly abandoned by the defendant it is the duty of the landlord to use due diligence to re-rent the premises and thus reduce the amount of the tenant's liability. The burden of establishing lack of due diligence by the landlord rests upon the tenant.

"3. The measure of damages for the abandonment of a lease by a tenant is the rent agreed to be paid

less whatever the landlord could have made out of the premises by the use of due diligence, after they came into his possession." *Hinde* v. *Madansky*, 161 Ill. App. 216.

"Upon abandonment of premises by the lessee it was the right and duty of the lessor to take charge of the property, preserve it from injury, and, if possible, re-rent it and thus reduce the amount for which the lessee was liable.

"We find no competent evidence in this record legally tending to prove that there was a mutual agreement between the parties for the canceling of the lease, and there is no pretense of a right on the part of the lessee to surrender the premises and cancel the lease without the consent of the lessor. There being no evidence fairly tending to prove the defenses offered, the peremptory instruction was properly given." *West Side Auction House Co.* v. *Insurance Co.*, 186 Ill. 156 (57 N. E. 839).

"An original lessee by the assignment of his lease is not released from the payment of the rent covenanted by him to be paid; but still remains liable therefor; and his assignee becomes liable on the same covenant because of his privity of estate, and because the covenant to pay rent runs with the land, and the original landlord may sue either the original lessee or the assignee upon such covenant." *Sexton* v. *Chicago Storage Co.*, 129 Ill. 334 (21 N. E. 920).

An abandonment is not the equivalent of a surrender of premises. To show a surrender of a lease, a mutual agreement between the lessor and the original lessee that the lease is terminated must be clearly proved, which surrender releases the original tenant from further liability. *Stewart* v. *Sprague*, 71 Mich. 50.

3. Upon the subject of interest on the deposit, while the court below found that under the seventh clause of the lease the defendant would be entitled to interest at the rate of 5 per cent. per annum upon the sum of $765, from the date of deposit to the date of de-

fault in the lease, it is very evident that the court did not properly apply the rule stated in the case. A careful computation of the interest will show that defendant was entitled to the benefit of the interest claimed by him, and that the judgment below was too large by the sum of $69.02.

If the plaintiff shall remit the sum of $69.02 from the damages recovered in the court below, within 30 days from the filing of this opinion, the balance of the judgment will stand affirmed, with costs in the circuit court to the plaintiff, but with costs of this court to the defendant. If remittitur is not filed, the judgment below will be reversed and a new trial granted, with costs to the defendant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.