**In re Peggy Ann ROBERTSON and Michael Ray Robertson, Debtors.**

**Bankruptcy No. 84 B 4878 G.**

United States Bankruptcy Court, D. Colorado.

March 29, 1985.

Leonard Berento, Smith & Lane, Littleton, Colo., for debtors.

John M. Marcucci, Leach & Clikeman, Denver, Colo., for Colorado Air Nat. Guard.

Thomas Farrell, Englewood, Colo., for Aetna Finance Co., creditor.

Janet MacFarlane, Denver, Colo., Trustee.

## MEMORANDUM ORDER RE: CONFIRMATION OF CHAPTER 13 PLAN

JAY L. GUECK, Bankruptcy Judge.

The debtors, Peggy and Michael Robertson, have filed a Chapter 13 Plan, part of which provides for the surrender to the Colorado Air National Guard Federal Credit Union (Credit Union) of a 1980 Datsun securing that creditor's lien. The Credit Union objects to confirmation of the Plan on the grounds that debtors are not actually returning the collateral or otherwise providing for payment under the Plan.

The Credit Union holds a security interest in the 1980 Datsun, which was utilized to secure a promissory note on which Mr. Robertson and his former wife, Denise,

were joint obligors. During divorce proceedings between Michael and Denise Robertson, the state court entered an Order awarding the vehicle to Denise and directing Michael to pay the debt. This, of course, is not an uncommon order in divorce courts. Michael then married his present wife, Peggy.

Michael and Peggy Robertson have now filed for bankruptcy under Chapter 13 of the Code and seek to absolve Michael of any further obligation on the debt to the Credit Union by providing for the "surrender of the security." However, according to Michael, Denise, who was awarded the automobile by the state court, has departed for parts unknown and so has the car. The basis upon which Michael thinks he can accomplish this "surrender" is to contend that he has "abandoned" the property, leaving the Credit Union to pick up the Datsun. Of course, since Michael doesn't know where Denise or the Datsun are, he is not in a position to tell the Credit Union where to go to get the car. It appears he is simply telling the Credit Union where to go. I suggest that when Denise and the state court learn of this, Michael will have even more problems.

Under this set of circumstances, the Credit Union objects to confirmation of the proposed Plan, contending the proposed action of the debtors does not comply with 11 U.S.C. § 1325(a)(5)(C).

I agree that the proposed treatment of the vehicle does not comport with § 1325(a)(5)(C). However, I do not agree this necessarily results in a denial of confirmation.

█ The Code provides that the court "shall" confirm a plan if the various criteria recited in § 1325 are satisfied. I do not construe this to mean that the court shall not confirm a plan if the various criteria are not met, so long as satisfactory provisions are set forth to protect the interests which may be adversely affected by noncompliance with the provisions of the Code.

█ The first question to be addressed is whether the surrender provision here constitutes a true "surrender". I have already

indicated it does not. The Code nowhere defines or elaborates on the meaning of "surrender" as it is used in Chapter 13. Its use in § 1325(a)(5) refers to the surrender of property securing a claim to the holder of that claim. Thus, it would clearly appear that Congress contemplated the term to mean the return and relinquishing of possession or control to the holder of a claim. This is consistent with the definition provided in Webster's Third New International Dictionary, dated 1966. That definition sets forth that the term "surrender" means "to give up to the holder in remainder or reversion; to relinquish to the grantor; to deliver into lawful custody.... to give or deliver up possession of upon compulsion or demand."

Similarly, the term "surrender" as defined in *Black's Law Dictionary* (4th Ed. 1951), means "to give back; yield; render up; restore; ... the giving up by a bankrupt of his property to his creditors or their assignees; ..."

■ What the debtor proposes to do here in no way meets the definition customarily observed in common usage of the term, "surrender." The debtor contends he is surrendering the security by abandoning it. Abandonment apparently arises as a result of the award of the vehicle by the state court to the ex-wife, with Michael claiming no further interest in that vehicle.

The term "abandonment" is defined to mean "desert, surrender, forsake, or cede.... To give up absolutely ... to relinquish all connection with or concern in; to desert." *In re Dalton*, 25 B.R. 654 (Bankr.E.D.Tenn.1982); *Black's Law Dictionary* 9 (4th Ed., 1951). An abandonment of title to property must be "clear and unmistakable." *In re Dalton, supra.*

It has been held that the term "surrender" differs from "abandonment," at least as applied to leased premises, inasmuch as the latter is simply an act on the part of the lessee alone; but to show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved. *Noble v. Sturm*, 210 Mich. 462, 178 N.W. 99 (1920). *Black's Law Dictionary* points out that "surrender" is a contractual act and occurs as a result of the consent of both parties. It appears that an abandonment may include a surrender, although a surrender may not necessarily constitute a total abandonment. Here, if the debtor were abandoning the security by giving it up to the creditor, that would be sufficient in my view to comply with the provisions of § 1325. That is not what the debtor is doing. The debtor is attempting to "abandon" an interest which has already been taken from him by the state court, and hoping this court will deem that to constitute his "surrender" under § 1325(a)(5)(C). I do not believe that is sufficient under the Code.

Since Michael Robertson is not in a position to give up the security to the creditor by delivering it to the custody of that creditor, he cannot comply with § 1325(a)(5)(C) of the Code.

I construe this attempted surrender by the debtors here to be a ruse to get out from under the obligation owed to the Credit Union.

Having concluded that the purported surrender is ineffectual, the question of whether this prevents confirmation must be addressed. I conclude that confirmation can still be accomplished, with adequate provisions made to protect the interests of this creditor.

■ Since the amended Plan does not actually provide for treatment of the debt to Credit Union, either by way of payment or surrender of the security, and the debt is not disallowed under § 502 of the Code, it is not subject to discharge under 11 U.S.C. § 1328(a). Further, while the effect of confirmation is to bind the debtor and each creditor under § 1327(a), the Order Confirming the Plan vests all property of the estate in the debtor free and clear of any claim or interest of any creditor, except as otherwise provided in the Plan and is only applicable to creditors provided for by the Plan. *See*, 11 U.S.C. § 1327(b) and (c). Thus, the Order Confirming the Plan which I now enter shall and does specifically provide that confirmation and the vesting of property in the estate in the debtor

is subject to this creditor's claims. It is not free and clear of the claim of Colorado Air National Guard Federal Credit Union. At such time as the debtors locate the 1980 Datsun and advise the Credit Union of the automobile's location and condition, the question of a discharge of this indebtedness can then be addressed. At that time the creditor will be in a position to effectuate a repossession and we will be able to examine whether payment for the automobile was a part of alimony or support or was a part of a division of property. In the meantime, I will entertain a motion for immediate relief from the co-debtor for stay under 11 U.S.C. § 1301, subject to notice and hearing under § 1301(c).