**Julie MANION, Defendant–Appellant,**

v.

**PROVIDIAN NATIONAL BANK, Plaintiff—Appellee.**

Civ.A. No. 00–K–1186.

Bankruptcy No. 98–10335 SBB.

Adversary No. 99–1468 SBB.

United States District Court, D. Colorado.

Nov. 6, 2001.

---

5. Mr. Sladek was at all relevant times at least nominally a lawyer.

Harvey Sender, Katch, Sender & Wasserman, P.C., Denver, CO, for appellee.

Mark Forrest Bell, Bloom, Murr & Accomazzo, Denver, CO, Steven G. Navaro, Navaro & Hopp, LLP, Englewood, CO, for appellant.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

This appeal from a bankruptcy court decision determines the rights of various parties in real property within the context of a bankruptcy and a statutory foreclosure. The case came before the bankruptcy court as an adversary proceeding between Providian, the holder of a certificate of purchase and Julie Manion, a junior lienor with redemptive rights. The debtor is Taina Vitt, an owner and one of the original mortgagors of the subject property.[1]

### BACKGROUND.

The appellant, Julie Manion, presents a version of the story of the three little pigs who outsmarted the big bad wolf and despite all his huffing and puffing kept a house and sold it for a profit. Julie Manion[2] placed three deeds of trust (each securing a $100 promisory note) on a property that had been sold two months earlier in a foreclosure sale and was subject to a surrender provision in a Chapter 13 bankruptcy plan. The following is the tale of the not so innocent three deeds of trust. The facts twist and turn enough to cause Theseus' ball of thread in the Labyrinth to seem by comparison no more than an untied shoestring.

On February 15, 1994, Taina Lee Vitt and her husband, Martin Vitt ("Vitts"), executed a promissory note in the amount of $80,445 and a deed of trust (the "First Deed of Trust") for the benefit of the Sycamore Financial Group encumbering their primary residence at 1125 Nottingham Street, Lafayette, Colorado 80026. Sycamore assigned the First Deed of Trust to Norwest. On April 19, 1995 the Vitts executed a promissory note in the amount of $40,100 and a deed of trust (the "Second Deed of Trust") for the benefit of First Deposit National. The Second Deed of Trust further encumbered the Property.[3]

The Vitts defaulted on the first promissory note. Pursuant to Colorado law, Norwest initiated a Public Trustee's foreclosure of the First Deed of Trust and filed a notice of election and demand for sale on November 19, 1997. Taina Vitt, d/b/a Esteem Fitness Wear, filed a Chapter 13 bankruptcy petition on January 12, 1998.[4] The bankruptcy stayed the foreclosure proceedings. Taina Vitt's Chapter 13 Plan, dated January 23, 1998, contained a provision stating that, "The Debtor shall surrender the property securing the liens of the following creditors: Norwest Mort-

1. At all times relevant Mrs. Vitt and her husband owned the subject property in joint tenancy.

2. In spite of all the information provided to the court, the exact nature of Ms. Manion's relationship to the Vitts is unclear. Whether she is friend, conspirator or mere acquaintance of Taina Vitt is unknown, but it is clear that she knew Taina and loaned her $300 with the express purpose of creating preemptive redemptive rights in the foreclosure process. She exercised the redemptive rights, acquired Taina's house and sold it for a tidy profit.

3. The value of the Property is never disclosed in the record. It is unclear to what extent the value of the property was sufficient to secure the first and second mortgages, but this missing fact only adds to the intrigue as the story unfolds.

4. Mr. Vitt has disappeared! The Chapter 13 plan was filed by Taina Vitt alone. Taina signed the plan, leaving the signature line for "Spouse" blank. Only the May 23 letter from Manion to Providian apprises us that the Vitts are divorced, but there are no recorded documents evidencing any change in the ownership of the subject property.

gage and Providian.[5]" On the same day Taina Vitt's petition was filed, Norwest filed a petition for relief from stay. Bankruptcy Judge Sidney Brooks granted Norwest relief from the automatic stay on April 22, 1998.

On May 20, 1998, Providian outbid Norwest by $1. Providian immediately tendered $92,257.70 to the Boulder County Public Trustee and was issued a Public Trustee's Certificate of Purchase for the Property. On the day after the foreclosure sale, May 21, 1998, Judge Brooks confirmed Mrs. Vitt's Chapter 13 Plan (the "Plan") pursuant to 11 U.S.C. § 1325. The Plan confirmation states that it followed a notice and hearing, however, there is no transcript from the hearing in the record.

Three days after the foreclosure sale, on May 23, 1998, Julie Manion wrote to Providian informing it that the Property was sold at the foreclosure sale. In this letter, addressed to Patricia Spanola of Providian, Manion stated that she "was previously working with Iqbal regarding this property" and that the property was sold at the foreclosure sale. Manion offered Providian $12,500 for its redemptive rights and told Providian that if it did not take any action on the Property its deed of trust would be extinguished. There is no response to this letter by Providian in the record.[6]

Two months after the confirmation of the Plan—on July 31, 1998 at the end of the owner's statutory period of redemption—Manion loaned Taina Vitt $300. To secure this loan, Taina Vitt executed three promissory notes in the amount of $100 each[7] and three purported "deeds of trust" on the Property in favor of Manion (the "Manion Deeds of Trust") The Manion Deeds of Trust were recorded. On August 3, 1998 (the last day of the owner's 75–day redemption period under C.R.S. § 38–38–302(1)) Manion filed three Notices of Intent to Redeem with the Boulder County Public Trustee. Pursuant to § 38–38–303, the redemption period was extended to August 24, 1998. All of the Notices of Intent to Redeem identify the Vitts, together, as grantors of the Manion Deeds of Trust; Taina Vitt, however, is the only grantor listed on the Manion Deeds of Trust themselves. On August 19, 1998, Manion executed a warranty deed granting her interest in the Property to John Dilday for $120,000.[8] Curiously, Manion didn't own the property at the time she executed the warranty deed. On the following day, August 20, 1998, Manion tendered redemption funds (the amount Providian bid at the foreclosure sale plus interest and other statutorily prescribed costs) to the Boulder County Public Trustee.[9] Though not stated in the record,

---

5. What is Providian? Portrayed as the clumsy Big Bad Wolf, Providian is the servicing agent for First National, authorized to act on its behalf for all activities concerning the Second Deed of Trust.

6. Manion's letter is a curiosity. Providian knows it purchased the property, yet Manion offers to purchase Providian's rights at less than half the amount owed on the Second Deed of Trust.

7. The Manion promissory notes provided for a balloon payment in full in December, 1999, with an interest rate of 36% per annum. In

exchange for the notes, Manion gave Mrs. Vitt three cashiers' checks for $100 each.

8. Mr. Dilday is not otherwise identified: Is he a bona fide purchaser or yet another friend, affiliate or acquaintance of Taina Vitt or Julie Manion? Nor does the record disclose who lives in the house on Nottingham Lane.

9. C.R.S. § 38–38–302(2) provides that once the public trustee issues the certificate of redemption to the redeeming party, the "public trustee...shall forthwith pay said money to the holder of the Certificate of Purchase." Providian was informed that all funds due

Manion must have then been issued a certificate of redemption by the Boulder County Public Trustee pursuant to C.R.S. § 38–38–402. The Dilday deed was recorded on August 27, 1998. On August 28, 1998, the Boulder County Public Trustee issued a Public Trustee's Deed in favor of Manion.

Enter Providian, who, unlike the wolf in the story, had a real and potentially superior right to those "created" by the three deeds of trust. Armed with the knowledge that it was about to be stripped of its security by the three deeds, Providian filed a verified complaint against Manion in Boulder County District Court on August 25, 1998. And so began the huffing and puffing. Providian sought declaratory relief, asking the court to set aside the Manion Deeds of Trust pursuant to C.R.S. § 38–8–101, and injunctive relief, asking the court to issue preliminary and permanent injunctions enjoining the Boulder County Public Trustee from issuing a public trustee's deed to Manion until such time as the bankruptcy court determined the validity of the Manion deeds. District Court Judge Murray Richtel dismissed Providian's action on August 27, 1998, on the basis that the pending bankruptcy court proceeding before Judge Brooks was the more proper forum for determining the parties' rights and remedies.[10]

On September 2, 1998, Providian commenced Adversary Proceeding No. 98–1570 PAC against Taina Vitt and Manion (the "First Adversary Proceeding") alleging claims similar to the Adversary Proceeding now on appeal. Providian amended the First Adversary Proceeding complaint in December 1998, seeking to avoid the post-petition transfer (of the Manion Deeds of Trust) by Taina Vitt to Manion pursuant to 11 U.S.C. § 549. After wending its way through the procedural maze of the bankruptcy court, the First Adversary Proceeding finally emerged as Adversary Proceeding No. 99–1468–SBB (the "Second Adversary Proceeding," filed September 9, 1999), the action presently on appeal before this court.[11]

and owing to it as the holder of the Certificate of Purchase were available to be disbursed, but Providian refused to accept the funds.

10. The standing of other foreclosure participants to mount a judicial challenge to the artificial lien is clouded by the uncertainty of their title interests during the redemption process. For example, the winning bidder is issued a certificate of purchase, which one court has described as "an equitable title defeasible by a redemption within the statutory time," while the owner/debtor retains "merely a statutory right to redeem from the sale, and a right to the possession of the premises until the expiration of the redemption period." This view comports with the automatic vesting of legal title in the certificate of purchase holder, on the end of all applicable redemption periods. It is in contrast, however, with the redemption statute's own definition of "lienor," which includes the holder of a certificate of purchase.

William T. Hudgins, "Artificial Redemption Rights: A Tool of Foreclosure Investing," 28 Colo. Law. 100 (October 1999)(internal citations omitted).

11. The reason for the second filing was largely technical. Upon receipt of the First Adversary Proceeding Complaint, Manion moved for dismissal/summary judgment asserting Providian lacked authority to prosecute an action under 11 U.S.C. § 549. Judge Clark of the Bankruptcy Court agreed, finding Providian had failed to obtain authorization from the bankruptcy court to maintain an avoidance action under § 549 and dismissing the Complaint without prejudice. At that time, Vitt had converted her bankruptcy case to Chapter 7 and Providian sought leave from the Chapter 7 trustee to take legal action against Vitt, Manion and/or Dilday independently. When the trustee refused—on grounds the trustee did not think the estate would benefit from such an action—Providian secured the appropriate authorization from Bankruptcy Court Chief Judge Brooks to proceed under § 549 and, on September 2.1999, filed the Second Adversary Proceeding.

The Second Adversary Proceeding Complaint asserted four claims for relief, asking the court to (1) enter declaratory judgment against Manion, holding that the Manion Deeds of Trust are void, that Providian is the valid holder of a Certificate of Purchase on the Property, and that Providian is entitled to damages against Manion in an amount to be determined at trial; (2) enforce its 11 U.S.C. § 105 Order reinforcing the terms of the Plan and holding that the Manion Deeds of Trust are void and that Providian is therefore entitled to damages against Manion in an amount to be determined at trial; (3) enter judgment voiding the Manion Deeds of Trust as post-petition transfers pursuant to 11 U.S.C. § 549(a) and awarding damages in an amount to be determined at trial; and (4) enter an order finding Taina Vitt in contempt of court and ordering sanctions against her in an amount including, but not limited to, an award of Providian's attorney fees.

The path to determining the parties' rights in the Property continued through the Labyrinth. On October 7, 1999, Taina Vitt filed a motion to dismiss the Second Adversary Proceeding, which Judge Brooks denied on November 4, 1999. On March 7, 2000, Manion filed a motion for summary judgment or for discretionary abstention, reasserting her argument that Providian lacked standing to avoid transfers under 11 U.S.C. § 549 and arguing that Providian's claim arose from its own failure to meet a state law redemption deadline; that the Manion Deeds of Trust did not involve property administered by the bankruptcy estate; and that Providian was not damaged by the transfer. Providian immediately cross-moved for summary judgment, arguing that if the Property was not property of the estate when the Manion Deeds of Trust were executed, then the deeds of trust would be void for

violating the surrender provision of the Chapter 13 Plan. Alternatively, Providian argued that if the Property *had* been property of the estate when the Manion Deeds of Trust were executed, the deeds would be void as post-petition transfers under 11 U.S.C. § 549. Providian also sought a declaratory judgment under 11 U.S.C. § 105(a) and an award of damages in the principal amount of $39,221.74, interest at 13.4% and attorney fees as provided by the Second Deed of Trust and by law. Judge Brooks was then left with the unenviable task of unraveling the cross-motions and coming up with some sort of solution.

On April 4, 2000, Judge Brooks denied Manion's motion for summary judgment, rejecting her argument that the Manion Deeds of Trust did not involve property administered by the estate and could not, therefore, be voided under 11 U.S.C. § 549. Judge Brooks determined Providian did not lack standing to assert the avoidability of the Manion Deeds of Trust under 11 U.S.C. § 549, declared that he would not abstain from hearing the case based on the reasoning of Boulder County District Judge Richtel, and concluding genuine disputes of material fact precluded entry of summary judgment against Providian on its claim for damages.

On May 31, 2000, Judge Brooks entered summary judgment in favor of Providian on three of its four claims for relief against Manion, ruling Providian was entitled to a declaration that the Manion Deeds of Trust were void under 11 U.S.C. § 1327(b) and the surrender provision of the Chapter 13 Confirmation Plan; that Providian was the valid holder of a Certificate of Purchase on the Property; and that damages be entered against Manion in the principal amount of $39,221.74, costs of $1,070.45, and interest at the rate of 13.4% from and

after August 19, 1998.[12] In addition, Judge Brooks exercised his powers under 11 U.S.C. § 105 to enforce the terms of the confirmed Chapter 13 Plan and to sanction Vitt for her violation of them. Finally, Judge Brooks ordered that summary judgment enter on Providian's third and alternative claim for relief, i.e., avoidance of the Manion Deeds of Trust as post-petition transfers under 11 U.S.C. § 549(a). *See* Order Granting Pl.'s Mot. for Summ. J., Adversary No. 99–1468–SBB ("Bankruptcy Order").

So, the three deeds of trust were thrown out, but the story of the house on Nottingham Lane is not yet over. On June 9, 2000, Manion filed this appeal pursuant to 28 U.S.C. § 158.

### STANDARD OF REVIEW

■ Pursuant to Rule 8013 the district court may affirm, modify or reverse a bankruptcy court's judgment, order or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. F.R. Bankr.R. 8013. Conclusions of law are reviewed *de novo*. *Colorado Public Util. Comm'n v. Yellow Cab Cooperative Ass'n (In re Yellow Cab Cooperative Association)*, 200 B.R. 237, 238–240 (D.Colo.1996)

### DISCUSSION

Providian's Second Adversary Proceeding Complaint presented four interrelated claims involving the validity of the Manion Deeds of Trust, the validity of Providian's Certificate of Purchase, judgment for damages, and sanctions for contempt against Taina Vitt for failing to abide by the provisions of her Chapter 13 Plan.

The "facts" in this case as they have been painstakingly discerned and collected, are undisputed. The issues on appeal are legal: whether Judge Brooks properly determined that the Manion Deeds of Trust are void either under 11 U.S.C. § 1327(b) and the surrender provision of the Chapter 13 Plan or under the avoidance provisions of 11 U.S.C. § 549(a). Manion challenges both of these determinations, as well as the award of damages and the imposition of sanctions under 11 U.S.C. § 105.

■ 11 U.S.C. § 1327(b) provides, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The bankruptcy court noted that the interplay between the surrender provision of a Chapter 13 Plan and the vesting provision of 11 U.S.C. § 1327(b) is one of first impression in this district. Manion argues that the Property re-vested in Taina Vitt upon confirmation of the Plan under § 1327(b), and that the surrender provision of the Plan had essentially no effect on the vesting. Manion argues the deeds of trust are valid because Taina Vitt executed the deeds when she was the "owner of the property with full legal authority to encumber the Property" by operation of 11 U.S.C. § 1327(b).[13]

---

**12.** Again the question arises: Where is Mr. Vitt? Mrs. Vitt acted alone on the property she held in joint tenancy with him. The bankruptcy court only briefly addressed the issue, stating that, "if, indeed, Mrs. Vitt was a joint tenant with Mr. Vitt at the time of the execution of the Manion Deeds of Trust—all she could encumber would be her interest in the property." Bankruptcy Order at 5, fn 6. While this issue was not the deciding factor for the bankruptcy court and was not addressed by either party extensively, it provides additional grounds for invalidating the Manion Deeds of Trust.

**13.** Manion cites *In re Christian*, 48 B.R. 833 (D.Colo.1985), but the case does not support

Manion relies on the language of 11 U.S.C. § 1327(b) and case law to argue that ownership and control of the Property vested in Taina Vitt upon confirmation of the Plan. However, the opening words of § 1327(b) make it clear that the Property did not vest in Vitt upon Plan confirmation because it was otherwise provided for in the plan through the surrender provision. Thus, as was held by the bankruptcy court, after confirmation of the plan, Taina Vitt had legal title to the Property and a right of redemption, but not an unqualified right of possession. Manion argues that under *In re Theobald*, 218 B.R. 133 (10th Cir. BAP 1998), a bankruptcy plan surrender provision entitles the creditor to nothing more than a relief from stay and the opportunity to pursue state law remedies to enforce its claim. *Theobald*, however, did not involve a determination of the debtor's rights in surrendered property, which is the issue in this case.

The *Theobald* court decided that a surrender provision in a Chapter 7 Individual Debtor's Statement of Intention under 11 U.S.C. § 521(2) did not require the debtor to transfer title to the creditor by executing and delivering a deed. *Id.* at 134. The court held that such an interpretation of "surrender" would "eviscerate state law" because the creditor would not be required to foreclose on the property or take any other action to ensure that the rights of the debtor and other creditors are provided for pursuant to state law. *Id*

at 136. Unlike the creditor in *Theobald*, Providian is not demanding that a deed be executed in its favor based solely on the Plan surrender provision.

In the instant case, the bankruptcy court found it significant

> that the foreclosure sale took place one day prior to confirmation of the Debtor's Amended Chapter 13 Plan. The lack of opposition by the Debtor to the granting of relief from the automatic stay to Norwest which enabled Norwest to proceed with and complete an unhindered foreclosure sale evidences the Debtor's intent to surrender the Property as expressly provided for in Debtor's Chapter 13 Plan. In addition, the foreclosure of the Property altered the Debtor's and, ergo, the estate's rights and interest in the Property prior to the confirmation of the Amended Chapter 13 Plan.

Bankruptcy Order at 5. As part of her confirmed Chapter 13 Plan, Vitt had agreed to settle the secured claims of Norwest and Providian by surrendering the Property to them. As interpreted by the court in *In re Robertson*, 72 B.R. 2 (Bankr. D.Colo.1985), section 1325(a)(5) contemplates that a surrender of property securing a claim to the holder of that claim means relinquishing possession or control of the property to the holder. *Id* at 3.[14]

▮ Because a Chapter 13 Plan confirmation binds both creditor and debtor, Taina Vitt was bound after May 21 to

---

the proposition. *In re Christian* stands for the prosaic rule of law that, while a debtor has less than full ownership of property after a foreclosure sale and issuance of a certificate of purchase, he retains title to the property, the right to possession of the premises, and the statutory right to redeem. *Id. Christian* further provides that the holder of a certificate of purchase has a lien on the property with the right to receive the redemption funds or, upon demand, a deed to the property if no redemption is made. *Id. Christian* does not

address a debtor's right after issuance of a certificate to *encumber* the property, and therefore does not reach the facts of this case.

**14.** 11 U.S.C. § 1325(a)(5) provides that a court shall confirm a plan if:

> with respect to each allowed secured claim provided for by the plan—
>
> \* \* \* \* \* \*
>
> (C) the debtor surrenders the property securing such claim to such holder.

honor the Plan by taking steps to relinquish control of the Property to Norwest and Providian. *See In re Talbot,* 124 F.3d 1201, 1208 (10th Cir.1997); 11 U.S.C. § 1327(a).[15] Vitt thwarted the explicit surrender provision of the Plan not only by failing to take such steps, but by rather brazenly acting to encumber the Property still further with the Manion Deeds of Trust. Judge Brooks's decision emphasized Vitt's demonstrated intent to deceive both the court and the parties in interest when she failed to surrender her interest in the Property:

> The Debtor's conduct by (1) not advising the Court or parties in interest of the execution of the Manion Deeds of Trust—which effectively defeated the surrender provisions of the plan—and (2) not modifying or amending the Amended Chapter 13 Plan to evidence that the Debtor would not be surrendering the property, evidences an intent to deceive Plaintiff and this Court.

Bankruptcy Order at 11. Judge Brooks concluded there were no material disputes of fact regarding Vitt's failure to surrender her interests in the Property as would preclude entry of summary judgment in Providian's favor. As to Providian's alternative argument, Judge Brooks agreed the Manion Deeds of Trust were also void under 11 U.S.C. § 549(a) as unauthorized postpetition transfers. His findings on this issue were clear: the estate retained an interest in the property as necessary to fulfill the Chapter 13 Plan, the transfer (execution of the Manion Deeds of Trust) occurred after the commencement of the case and the execution of the Manion

Deeds of Trust were not authorized by the court. Order at 12.

On appeal Manion argues Providian lost its interest in the Property by failing to file a Notice of Intent to Redeem or by not redeeming its own Certificate of Purchase pursuant to C.R.S. § 38–38–302(1). Section § 38–38–302(1) allows the "owner of the property, or any other person liable after the foreclosure sale for the deficiency" to redeem the property sold at the foreclosure sale by paying the sum for which it was sold to the public trustee. The section applies to the Vitts' right to redeem, not Providian's.

Section 38–38–303(1), the *lienors'* redemption provision, provides that "if no redemption is made within the redemption period provided for in section § 38–38–302, the lienor having the senior lien...may redeem within ten days" Under Colorado law, the redeeming owner or lienor pays the sum for which the property was sold at the foreclosure sale plus costs to the public trustee, who then pays that sum to the holder of the Certificate of Purchase. Providian planned to obtain title to the Property by virtue of its status as holder of a valid certificate of purchase and Vitt's surrender of the property under the Plan; it was not also obligated to redeem the property under 38–38–302 to secure its rights as a result of dubiously valid artificial liens created out of whole cloth.

The "artificial liens" placed on the property by Manion had the effect of turning the statutory redemption process upside down. As one commentator wrote: "To the real estate practitioner, the artificial

---

**15.** Manion's reliance on *In re Robertson,* 72 B.R. 2 (Bankr.D.Colo.1985) to assert she complied with the "surrender" provision of the Plan is unpersuasive. In *Robertson,* the bankruptcy court rejected debtors' assertion that their "abandonment" of their car was tantamount to "surrendering" it to their credit union, interpreting the word "surrender" in § 1325(a)(5)(C) to require the actual return or "relinquishing of possession or control" of property to the holder of a claim. 72 B.R. at 3. As such, *Robertson* actually supports Providian's argument, not Manion's.

lien technique should invite special concern because of its direct circumvention of the equitable foundations of the statutory redemption process."[16] The statutory scheme is designed to address competing goals—the encouragement of competitive bidding on property at a sale and the provisions of a system for protecting the rights of an owner to redeem property that is subject to a lien. In order for the system to work, the balance between these goals must be maintained. Here, the balance was compromised by the actions of Ms. Vitt and Manion.

■ The late and unnoticed filing of the three liens by which Manion established her "right" to redeem was intended to subvert the process and create preemptive redemptive rights where there were none under the confirmed Chapter 13 plan. The statutory scheme was never intended to work that way. "The purpose of the redemption laws is to help creditors recover their just demands, nothing more. Equity has always prevented the redemption laws from being used as 'an instrument of oppression when substantial justice can be done without enforcing them to the letter.'" *Osborn Hardware Co. v. Colorado Corp.*, 32 Colo.App. 254, 510 P.2d 461, 463 (1973)(quoting *Plute v. Schick*, 101 Colo. 159, 71 P.2d 802 (1937)).

But for the improper and inequitable actions of Manion, title would have vested

in Providian as the holder of a valid certificate of purchase.[17] As it happened, however, Providian neither delivered its certificate of purchase nor demanded a deed to the property after the intervening actions by Manion. Having now obtained a declaration as to the invalidity of the Manion Deeds of Trust Providian is left as it began—the holder of a valid certificate of purchase to property that has been conveyed to another.

■ Section § 105 of the Bankruptcy Code vests the bankruptcy court with discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In an exercise of this discretion, the bankruptcy court declined to unravel the multiple transactions that took place after Manion obtained her $100 deeds of trust from Vitt and instead ordered Manion to pay damages to Providian based on the amount the Vitts were indebted to Providian under the Second Deed of Trust The damages figure determined by the bankruptcy court was based on an affidavit provided by Thomas W. Hughes, Default Manager for Providian National Bank. Providian bid the amount owed to holder of the First Deed of Trust when it purchased the Property at the foreclosure sale, but had anticipated owning the Property and being able to sell it at a price that would cover it.

16. An owner's use of the artificial lien allows the owner to redeem in the guise of a lienor, after the owner's redemption has expired. It also avoids the revival of liens that would otherwise occur when an owner redeems. An investor's redemption allows it to appropriate the most advantageous right available to existing lienors in the case of under-encumbered property, the last right to redeem. The effect of an artificial lien thus invades every assumption of the redemption process, upsetting the balance of equities and incentives contemplated under Colorado's legislative scheme.

William T. Hudgins, "Artificial Redemption Rights: A Tool of Foreclosure Investing," 28 Colorado Lawyer, October, 1999.

17. C.R.S. § 38–38–501 provides that, "[u]pon expiration of the period of redemption allowed to the owner and all subsequent lienors entitled to redeem, title to the property sold shall vest to the holder of the certificate of purchase or the holder of the certificate of redemption issued to the lienor last redeeming..."

In sum, the bankruptcy court correctly determined that Providian's certificate of purchase was valid and the Manion Deeds of Trust invalid. Given that Manion secured a public trustee's deed and transferred the property to a third party, however, the bankruptcy court elected not to invalidate these transactions but to make the parties whole as best it could.[18]

There remains the question of the status of the record title to the Property. In order to clarify and remove any uncertainty as to the status of title, this case is remanded with the following instructions:

Upon payment of all sums due by Manion, Providian should execute and deliver an Assignment of the Certificate of Purchase and a Quit Claim Deed to Manion. Other than the legal findings reached in this case with respect to Manion's and Providian's rights in the Property, there is no change in the ultimate ownership of the Property contemplated.[19]

The judgment of the bankruptcy court is AFFIRMED and the case REMANDED for findings consistent with this order to remove doubt as to the correct record ownership of the Property.

---

18. Alas the tale is done,
Truth be told, no one won.
This court has simply tried to restore
That which is to what was before.
Manion paid the price

For what the deeds of trust thrice
Deviously sought to take away
And such is the fate of claims made of hay.

