**In re Taina Lee VITT, d/b/a Esteem Fitness Wear, Debtor.**

**Providian National Bank, Plaintiff,**

v.

**Taina Lee Vitt and Julie Manion, Defendants.**

**Bankruptcy No. 98–10335–SBB.**
**Adversary No. 99–1468–SBB.**

United States Bankruptcy Court, D. Colorado.

May 31, 2000.

Barton S. Balis, Boulder, CO, for Taina Lee Vitt.

Mark F. Bell, Denver, CO, Steven Navaro, Englewood, CO, for Julie Manion.

Harvey Sender, Denver, CO, for Providian National Bank.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SYDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Providian National Bank's ("Plaintiff") Motion for Summary Judgment against Defendants Taina Lee Vitt ("Debtor") and Julie Manion ("Manion") (together Manion and Debtor shall be referred to herein as "Defendants") and the Response thereto filed herein by Manion. Debtor did not respond or otherwise plead. The Court, having reviewed the respective pleadings, the file and being advised in the premises, enters the following order.

For the reasons set forth herein, this Court concludes that the Plaintiff's Motion for Summary Judgment should be GRANTED and judgment entered against

Manion and in favor of Plaintiff on the First through Third Claims for Relief. In addition, the Court concludes that Summary Judgment on Plaintiff's Fourth Claim for Relief should be DENIED, without prejudice, at this time.

## I. *JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(H) and 28 U.S.C. § 1334.

## II. *UNDISPUTED FACTS*

Based upon the allegations raised in the Plaintiff's Complaint and the Answers filed herein by Defendants—together with the pending Motion for Summary Judgment and Manion's Response thereto—it does not appear that there are any genuine issues as to any material facts.[1]

### A. *Pre–Bankruptcy Events*

Debtor and her former husband, Martin B. Vitt ("Mr.Vitt") executed a promissory note ("First Note") and a deed of trust in favor of Sycamore Financial Group, Inc. ("Sycamore") in the principal amount of $80,455.00 ("First Deed of Trust"). The First Deed of Trust was subsequently recorded on March 3, 1994 at Film 1947, Reception No. 0140419, in the Office of the Clerk and Recorder, Boulder County, State of Colorado. Sycamore thereafter assigned the First Deed of Trust to Norwest Mortgage, Ltd. ("Norwest").

On or about April 19, 1995, Debtor and Mr. Vitt executed a promissory note ("Second Note") and deed of trust ("Second Deed of Trust") for the benefit of First Deposit National Bank ("First Deposit") in the principal amount of $40,100.00. The Second Deed of Trust was recorded on April 20, 1995, at Film 2047, Reception No. 01511024, in the Office of the Clerk and Recorder, Boulder County, State of Colorado. Plaintiff is the servicing agent for First Deposit.[2]

The First Deed of Trust and the Second Deed of Trust encumbered the following real property:

Lot 13, Block 4,
Churchill Pointe Subdivision
Filing No. 1,
County of Boulder, State of Colorado

and has the common address of 1125 Nottingham Street, Lafayette, Colorado 80026 ("Property").[3]

Debtor and Mr. Vitt defaulted under the terms of the First Note and First Deed of Trust. As a result, Norwest filed a notice of election and demand on November 19, 1997, at Reception No. 01748754, in the Office of the Clerk and Recorder, Boulder County, State of Colorado.

### B. *The Chapter 13 Bankruptcy, the Foreclosure, Transfer and Redemption of the Property*

On January 12, 1998, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. On April 22, 1998, Norwest was granted relief from the automatic stay to permit it to continue foreclosure proceedings on the property.

---

1. This Court previously held, in denying Defendant Manion's Motion for Summary Judgment, that "this Court will need to make an appropriate finding based upon the evidence before declaratory judgment is proper." The evidence submitted with the pending Motion for Summary Judgment and Manion's Response now before the Court, together with the facts ascertained from the Complaint and the admissions contained in the Defendants' Answers, demonstrate that there are no genuine issues as to "material facts" and the remaining issues are matters of law.

2. The Defendant states that "she is without knowledge of the allegation set forth and therefore denies same." The Court shall take the Plaintiff's statement that it is the servicing agent for First Deposit as true and without substantial controversy. *See* Fed.R.Civ.P. 56(d).

3. The Defendant admits that the First Deed of Trust and Second Deed of Trust at one time encumbered the Property. However, Defendant denies that such liens currently encumber the property.

On May 20, 1998, the Boulder County Public Trustee sold the property to Plaintiff for $92,257.70 as the highest bidder at the foreclosure sale. The Boulder County Public Trustee issued a Certificate of Purchase to Plaintiff on May 20, 1998, which Certificate was recorded on May 27, 1998, at Reception No. 01805744, in the Office of the Clerk and Recorder, Boulder County, State of Colorado.

On May 21, 1998, the Debtor's amended Chapter 13 plan ("Amended Chapter 13 Plan") was confirmed. The Amended Chapter 13 Plan expressly provided, in part, that the Debtor would surrender the Property which secured the liens of Norwest, Plaintiff and Sears.[4] The Amended Chapter 13 Plan also provided that "[p]roperty of the estate shall vest in the debtor at the time of confirmation of this Plan..."

Two months after confirmation of the Amended Chapter 13 Plan—on July 31, 1998—Debtor executed three separate deeds of trust for the benefit of Manion ("Manion Deeds of Trust"). Mr. Vitt did *not* execute the Manion Deeds of Trust. Each of the Manion Deeds of Trust secured a separate promissory note in the principal amount of $100.00 and provided for a balloon payment in December 1999, with interest accruing at the rate of 36% per annum. The Manion Deeds of Trust were recorded at Reception Nos. 01830390, 0183091, and 01830392, in the Office of the Clerk and Recorder, Boulder County, State of Colorado. The Manion Deeds of Trust purported to encumber the property. The Debtor *never* attempted to amend her plan to reflect that the Property would *not* be surrendered.

The redemption period of 75-days, pursuant to Colo.Rev.Stat. § 38-38-302 was set to expire August 3, 1998. On August 3, 1998, Manion filed with the Boulder County Public Trustee three notices of intent to redeem and an affidavit of the amount owed. This filing extended the redemption period through and until August 24, 1998.

On August 19, 1998, Manion executed a warranty deed granting her purported interest in the property to John Dilday ("Dilday") for $120,000.00. The warranty deed was recorded on August 27, 1998, in the Office of the Clerk and Recorder, Boulder County, State of Colorado.

On August 20, 1998, Manion tendered redemption funds to the Boulder County Public Trustee. On August 28, 1998, the Boulder County Public Trustee issued a Public Trustee's Deed in favor of Manion.

On May 14, 1999, Debtor filed her request to convert this case to Chapter 7. On May 18, 1999, the Order for Conversion was entered.

## III. *ISSUES PRESENTED*

Plaintiff, by its Complaint and the pending Motion for Summary Judgment, presents four interrelated issues for this Court to determine. First, Plaintiff, on its First Claim for Relief, seeks a declaratory judgment from this Court holding that the Manion Deeds of Trust are void, that the Plaintiff is the valid holder of a Certificate of Purchase on the Property and that a judgment for damages be entered against Manion.

Second, Plaintiff, by its Second Claim for Relief, seeks an Order pursuant to 11 U.S.C. § 105 enforcing the terms of the confirmed Amended Chapter 13 Plan and holding that the Manion Deeds of Trust are void for the reason that (1) the execution thereof violated the "surrender" provisions of the Amended Chapter 13 Plan and (2) the Property was not property that belonged to the Debtor. Plaintiff also seeks a determination, under 11 U.S.C. § 105, that the Plaintiff is the valid holder

---

4. Specifically, the Amended Chapter 13 Plan provided that:

Debtor shall surrender the property securing the liens of the following creditors:

| | |
|---|---|
| Norwest Mortgage | Real Estate |
| Providian | Real Estate |
| Sears | Property not in debtor's possession |

of a Certificate of Purchase on the Property. Furthermore, Plaintiff prays for damages against Manion.

Third, Plaintiff's Third Claim for Relief seeks entry of a judgment against Manion finding that the Manion Deeds of Trust are void as post-petition transfers pursuant to 11 U.S.C. § 549(a) and that damages should be awarded for such post-petition transfers. Thus, this Court must determine whether (1) the Property was property of the estate; (2) the transfer occurred after the commencement of the bankruptcy case; and (3) the transfer was authorized under Title 11 of the United States Code or by this Court.

Fourth, Plaintiff's Fourth Claim for Relief seeks contempt sanctions against the Debtor for her failure to abide by the provisions of the Amended Chapter 13 Plan.

## IV. *DISCUSSION*

### A. *Standard for Summary Judgment*

Summary judgment is to be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056 which applies Fed. R.Civ.P. 56. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Thalos v. Dillon Companies, Inc.,* 86 F.Supp.2d 1079, 1082 (D.Colo.2000). The non-moving party has the burden of showing that there are issues of material fact to

be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party(ies) may not rest merely on the allegations contained in the answers, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Thalos,* 86 F.Supp.2d at 1082. This Court will review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party—here Manion and the Debtor. *Koch v. Koch Industries,* 203 F.3d 1202, 1212 (10th Cir.2000). The material facts herein are not disputed. This dispute is essentially and decisively a question of law. The Court concludes that, for the reasons discussed below, as a matter of law, Plaintiff is entitled to summary judgment in its favor.

### B. *Plaintiff's First Claim for Relief (Declaratory Judgment Holding that Manion Deeds of Trust are Void)*

#### 1. *The Estate's and Debtor's Rights in and to Property Following the Foreclosure Sale*

It is quite significant that the foreclosure sale took place one day prior to confirmation of the Debtor's Amended Chapter 13 Plan. The lack of opposition by the Debtor to the granting of relief from the automatic stay to Norwest which enabled Norwest to proceed with and complete an unhindered foreclosure sale evidences the Debtor's intent to surrender the Property as expressly provided for in Debtor's Chapter 13 Plan.[5] In addition, the foreclosure of the Property altered the Debtor's and, ergo, the estate's rights and interest in the Property prior to the confirmation of the Amended Chapter 13 Plan.[6]

---

**5.** This Court also finds that the granting of relief from the automatic stay did not remove the Property from the category of property of the estate. *In re Fricker,* 113 B.R. 856, 864 (Bankr.E.D.Pa.1990). It also does not divest the bankruptcy court of jurisdiction over the Property. *In re Cordry,* 149 B.R. 970, 973-74

(D.Kan.1993). Relief from the automatic stay merely entitles the creditor to realize its security interest or other interest in the property. *In re Killebrew,* 888 F.2d 1516, 1520 (5th Cir.1989).

**6.** Another curious feature of this case which is not addressed in detail by the parties is the

In the non-bankruptcy context, prior to a foreclosure sale, an owner of real property holds all incidents of ownership in the Property. "Upon a foreclosure sale, the owner retains title to the property, right to possession of the premises, and the statutory right to redeem." *In re Christian,* 48 B.R. 833, 835 (D.Colo.1985).[7] Here, Providian, as the purchaser at the sale, and the holder of the certificate of purchase, held a lien on the property, with a right to receive the redemption money, or, if no redemption was made, the right, upon demand, to receive a deed to the property. *Green v. Hoefler,* 115 Colo. 287, 290, 173 P.2d 208 (Colo.1946). Thus, after (1) the granting of relief from the automatic stay, (2) the sale, and (3) the issuance of the certificate of purchase, the Debtor had less than full or unrestricted rights or interests in the property. *Christian,* 48 B.R. at 835. Although the Debtor retained record legal title in her name after the foreclosure sale and issuance of the certificate of purchase, she had only limited and qualified rights in and to the Property. *Id.; see infra* Section IV(B)(3). Those limited and qualified lights in and to

the Property were subject to Providian's lien in the Property entitling Providian to a deed from the public trustee at the expiration of the redemption period, provided there was no redemption.

## 2. The Vesting Provision of 11 U.S.C. § 1327(b)

The interaction of a surrender provision in a Chapter 13 plan and the vesting provision of 11 U.S.C. § 1327(b) appears to be one of first impression in this District. The task, then, for this Court is to parse out (1) whether the Property remained property of the estate at confirmation or (2) whether the Property was (a) transferred or "vested" in the Debtor at the time of confirmation or (b) transferred to Creditor by operation of the surrender provisions of the Amended Chapter 13 Plan.

When the Debtor filed her Chapter 13 bankruptcy case, a bankruptcy estate was created which comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[8] It is undisputed that the

---

fact that *Mr. Vitt did not execute the three Manion Deeds of Trust.* There is no evidence before this Court that he transferred his interest in the Property to Debtor or that his interest in the Property was otherwise terminated. In fact, the Debtor's Schedule A indicates that the Property is held in joint tenancy with Mr. Vitt. The First Deed of Trust and Second Deed of Trust were executed by Mr. Vitt during his marriage with Debtor. "Rights in real property held in joint tenancy are fixed and vested in the joint tenants at the time of the creation of the tenancy. A joint tenant cannot alienate, encumber, or transfer the interest of other joint tenants without their consent." *First Nat'l Bank of Southglenn v. Energy Fuels Corp.,* 200 Colo. 540, 545, 618 P.2d 1115, 1118 (Colo.1980) (citations omitted); Colo.Rev.Stat. 38–31–101. During the joint tenancy, each tenant owns the undivided whole of the property. *Place v. Carmack,* 33 Colo.App. 411, 414, 522 P.2d 592, 593 (Colo.Ct.App.1974), *rev'd on other grounds, Carmack v. Place,* 188 Colo. 303, 535 P.2d 197 (Colo.1975). Where a joint tenancy exists, all that can be conveyed by a joint tenant is her interest in the Property. *Com-*

*mercial Factors of Denver v. Clarke & Waggener,* 684 P.2d 261, 263 (Colo.Ct.App.1984). As Debtor appears to be a joint tenant at the time of the execution of the Manion Deeds of Trust, she would have needed the consent and concurrence of Mr. Vitt to encumber both her interest and that of Mr. Vitt in the Property. *Id.* Although the Court reaches its conclusions in favor of the Plaintiff on other grounds, if, indeed, Debtor was a joint tenant with Mr. Vitt at the time of the execution of the Manion Deeds of Trust, all she could encumber would be her interest in the Property.

7. The case relied upon by the Court in *In re Christian,* actually stated that *all* the owner retains after the foreclosure is the right to possession of the premises and the right to redeem. *Farmers' Union Mutual Protective Association v. San Luis State Bank,* 86 Colo. 293, 302, 281 P. 366, 369 (Colo.1929). No reference was made by the Court in *Farmers' Union* regarding the retention of title to the property.

8. 11 U.S.C. § 541 is made applicable to Chapter 13 cases by 11 U.S.C. § 103(a).

Property was part of the estate at the time of filing.[9] The question presented in this case is whether the Property remained property of the estate after confirmation of Debtor's Amended Chapter 13 Plan. This determination is dependant upon the extent to which 11 U.S.C. § 1327(b) "vests" property of the estate in Debtor at the time of confirmation. The courts have reached three separate, distinct and divergent views on this issue.

One line of cases hold that unless otherwise provided in the plan or order of confirmation, the vesting of property pursuant to 11 U.S.C. § 1327(b) removes all property from the estate, transfers that property to the debtor, and causes the estate to come to an end. *In re Nash*, 765 F.2d 1410, 1414 (9th Cir.1985). These cases hold that there is no estate or estate property after confirmation.

Another line of cases hold that vesting under 11 U.S.C. § 1327(b) does not remove any property from the estate, and confirmation effects no change in the estate. *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir.1993). In other words, all of the property coming into the estate at the time the case was filed continues to be estate property even after confirmation of the Chapter 13 plan.

The United States Bankruptcy Court for the District of Colorado has followed a third line of cases. This line of cases is a middle ground between complete termination of the estate and complete preservation of the estate post-confirmation. These cases hold that the vesting provided for by Section 1327(b) does not terminate the estate, but does transfer to the debtor most, if not all, of the property in the estate at the time of confirmation. *In re*

*Thompson*, 142 B.R. 961, 964 (Bankr. D.Colo.1992); *In re Root*, 61 B.R. 984, 985 (Bankr.D.Colo.1986). The cases in this third category agree on the general principal that the estate survives confirmation, but splits over what kind of property is specifically included in the estate after confirmation. *See In re Fisher*, 203 B.R. 958, 961 (N.D.Ill.1997) (property interests which comprise of the Chapter 13 debtor's pre-confirmation estate leave the estate and vest in the debtor upon confirmation, whereas property acquired post-confirmation is deemed estate property); *In re Heath*, 115 F.3d 521, 524 (7th Cir.1997) (a Chapter 13 debtor's plan upon confirmation returns "so much of that property to the debtor's control as is not necessary to the fulfillment of the plan"); *In re Ziegler*, 136 B.R. 497, 500 (Bankr.N.D.Ill.1992) (the post-confirmation estate consists only the post-petition income of the debtor needed to fund the plan).

In the *Root* decision, Judge Brumbaugh held that "[t]here must be an 'estate' upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 Plan." *Root*, 61 B.R. at 985. Judge Brumbaugh reiterated this ruling in his 1992 *Thompson* opinion stating that "under § 1306(a)(2), so much of the debtors' future earnings *as are necessary to meet their plan payments*, become property of the estate." *Thompson*, 142 B.R. at 964 (emphasis added). He provided a "bright line" test which provided that "property of the estate consists *only* of those funds actually paid to the Chapter 13 Trustee." *Id.* (emphasis added). This Court agrees with the reasoning in the *Root* and *Thompson* cases and finds that

---

**9.** 11 U.S.C. § 1306 also includes in the definition of "property of the estate" certain property acquired post-petition, including:
(1) all property of the kind specified in [11 U.S.C. § 541] that the debtor acquires after the commencement of the case but before *the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first;* and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
11 U.S.C. § 1306(a)(1) and (2).

11 U.S.C. § 1327(b) does transfer to the debtor most, if not all, of the property in the estate at the time of confirmation, but does not terminate the estate.

### 3. *"Surrender" of the Property*

The Debtor's Amended Chapter 13 Plan which was confirmed the day after the foreclosure sale provided that the Property would be surrendered to Norwest and Plaintiff. "A fair rendition of section 1325(a)(5)(C) requires that the actual surrender of the collateral occur before or at confirmation, or at the effective date of the plan." Lawrence P. King, Collier on Bankruptcy, ¶ 1325.06[4], at 1325–41 (15th ed.1999). Unfortunately, the Bankruptcy Code does not specifically define the term "surrender." However, the word is commonly use to mean: "to yield (something) to the possession or power of another" ... "to give up" or "relinquish." The Random House College Dictionary 1323 (1980). Black's Law Dictionary 1444 (6th ed.1990) defines the term "surrender" to mean "[t]o give back; yield; render up; restore ..." *See also In re Robertson*, 72 B.R. 2, 4 (Bankr.D.Colo. 1985).[10]

Furthermore, 11 U.S.C. § 1325(a)(5)(C) permits this Court to confirm a plan if "with respect to each allowed secured claim provided for by the plan ... the debtor surrenders the property securing such claim to such holder ..." "The operative phrase in section 1325(a)(5)(C) does not end with the word 'property' but continues with the words 'to such holder,' making it plain that a debtor must at least

tender possession or control of the collateral to the creditor, without regard to whether the creditor's consent is a further condition." *In re Smith*, 207 B.R. 26, 29 (Bankr.N.D.Ga.1997). Consequently, Debtor was to *actually* surrender—i.e. give up, relinquish or yield—to Norwest and Plaintiff her possession or control of her interest in the Property before or at confirmation, or at the effective date of the plan.[11] In conjunction with the express provisions of 11 U.S.C. § 1327(b), the Amended Chapter 13 Plan indeed vested all of the property of the estate in the debtor, except for (1) those sums necessary to be actually paid to the Chapter 13 during the course of a confirmed plan and (2) the Property which was surrendered to Norwest and Plaintiffs. The confirmed Chapter 13 plan, when it became final, was a binding determination of the rights and liabilities of the parties. *In re Talbot*, 124 F.3d 1201, 1208 (10th Cir.1997); 11 U.S.C. § 1327(a).

Here, Norwest had obtained relief from the automatic stay and the foreclosure sale took place one day prior to confirmation of the Amended Chapter 13 Plan. Thus, by all appearances, it seemed that the Debtor was complying with the Plan by permitting the foreclosure to go forward and by seeking the confirmation of the Amended Chapter 13 Plan. There is no genuine dispute as to the material fact that the Debtor failed to surrender her interest in the Property in contravention of the express requirements of her Plan. In fact, all of the undisputed evidence reveals that the Debtor acted to retain control, exercise certain

---

**10.** In the *Robertson* case, the Court also differentiated between the term "surrender" versus "abandonment." The Court held that a "surrender" is a contractual act and occurs as a result of the consent of both the debtor and creditor. *Id.* at 4. An "abandonment," however, is simply an act on the part of the debtor. *Id.*

**11.** The Tenth Circuit, in examining 11 U.S.C. § 521, has determined that a statement of intent to surrender by a debtor does not create an automatic benefit for a secured creditor by establishing an immediate right to re-

possess the collateral. *In re Theobald*, 218 B.R. 133, 135 (10th Cir. BAP 1998). Further, a debtor by his or her statement of intentions is not required to both relinquish possession and execute such documents to convey transfer of the Property to a creditor. *Id.* However, the combination of (1) the granting of relief from the automatic stay or termination of the stay and (2) a plan provision for surrender to effectuate the plan, enables a creditor to pursue its state law remedies to effectuate the plan provisions.

rights, and to convey an interest in the Property completely inconsistent with—indeed contrary to—her confirmed plan. Further, there is no genuine dispute raised by Manion that, in fact, Manion assisted the Debtor in breaching the surrender provision in the Chapter 13 Plan.

Debtor, after the foreclosure sale had less than full ownership interest in the property. As discussed *supra* in Section IV(B)(1), the ownership interest after the foreclosure sale and prior to confirmation consisted of bare title, a right of possession during the redemption period and a right of redemption. *In re McCarn,* 218 B.R. 154, 162 (10th Cir. BAP 1998) (a right of redemption is an interest of the debtor in property that is property of the estate under 11 U.S.C. § 541(a)). After confirmation of the Chapter 13 Plan, the Debtor was vested in (1) title to the Property and (2) a right of redemption. *But see In re Kerwin–White,* 129 B.R. 375, 387 (Bankr. D.Vt.1991), *aff'd sub nom, In re Kerwin,* 996 F.2d 552 (2d Cir.1993).[12] However, the Debtor was *not* vested in a complete or unqualified right of possession of the Property. *See e.g.* 11 U.S.C. § 1306(b). Debtor was to surrender possession of the Property or effectuate the means by which a surrender of the possession of the Property would take place.

■ Furthermore, the estate retained at least a *de minimus* interest in the Property to the extent necessary to fulfill the terms of the confirmed Chapter 13 Plan. *In re Heath,* 115 F.3d 521 (7th Cir. 1997) (the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan).[13] Thus, in order to "fulfill the terms" of the Amended Chapter 13 Plan, Debtor was to surrender the Property to Norwest and Providian. The Debtor's interest in the Property—title to the Property, the right of possession and the right of redemption—was property of the estate until the Property was surrendered because the Property and the surrender thereof was necessary to the fulfillment of the Amended Chapter 13 Plan. As a result of the Debtor's execution of the Deeds of Trust the plan was not fulfilled. A further consequence of the Debtor's actions is that the money received by the Debtor from Manion—in place or in lieu of the actual surrender of the Property—also constituted property of the estate. *See* 11 U.S.C. §§ 541(a) and 1306(a)(1).

■ The Debtor and Manion interfered with—and defeated—the express terms of the Plan. As a result, the Manion Deeds of Trust are void and of no effect, and Plaintiff, the purchaser at the foreclosure sale, is the valid holder of the Certifi-

**12.** In the *Kerwin–White* case the court analyzed a Chapter 12 case and, specifically, the provisions of 11 U.S.C. §§ 1225(a)(5)(C) and 1227(b) which are identical to their counterparts in Chapter 13, 11 U.S.C. §§ 1325(a)(5)(C) and 1327(b). The Court held that in a case where a Chapter 12 plan provided for surrender of collateral, there was no requirement for prior Court approval of a creditor's sale of that collateral after it has been surrendered. The Court found that the debtor and the estate have no interest left in the property once it has been surrendered to the creditor under a plan of reorganization. "Indeed, the surrendered collateral is vested in the creditor upon confirmation." *Id.* at 387.

**13.** The Court held that the confirmed plan did not place all of the debtor's income until the completion of the plan in the estate, "but only so much of the income (*or her other property*)

as necessary to the fulfillment of the plan." *Id.* at 524 (emphasis added). In the *Heath* case the Chapter 13 trustee was seeking to recover a one-time $50.00 charge for garnishing debtor's wages pursuant to a confirmed plan. This charge was determined to be not necessary to the fulfillment of the debtor's plan for the reason that the debtor's financial situation was not so fragile that the loss would jeopardize the fulfillment of the plan. This case is distinguishable from the present case both qualitatively and quantitatively. A significant element to fulfilling the terms of the Debtor's Amended Chapter 13 Plan was the surrender of the Property to Plaintiff and Norwest. The Amended Chapter 13 Plan was not fulfilled and, based upon the unrefuted affidavit of Plaintiff, the loss to Plaintiff caused by the Debtor's failure to fulfill the terms of the Amended Chapter 13 Plan is substantial.

cate of Purchase on the Property. Therefore, Plaintiff shall be granted Summary Judgment on its First Claim for Relief and a declaratory judgment shall issue holding that the Manion Deeds of Trust are void and that the Plaintiff is the valid holder of a Certificate of Purchase on the property. Furthermore, based upon the affidavit of Thomas W. Hughes, a Default Manager for Providian National Bank, this Court shall award damages in the principal sum of $39,221.74, costs of $1,070.45, and interest at the rate of 13.4% per annum from and after August 19, 1998.

B. *Plaintiff's Second Claim for Relief (Order Pursuant to 11 U.S.C. § 105 Enforcing the Terms of the Confirmed Amended Chapter 13 Plan)*

The evidence and the record before this Court demonstrate that the Debtor did not amend her confirmed Chapter 13 Plan to evidence that she was *not* surrendering the property. Debtor's Schedule A and Petition reveal that the Property was the Debtor's principal residence. A Chapter 13 plan may

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b).[14]

A Chapter 13 plan may be modified after confirmation to alter the amount of distribution to a creditor whose claim is provided for by the plan. 11 U.S.C. § 1329(a)(3). If the plan is modified, at least 20 days notice of the time fixed to accept or reject a proposed modification of the plan must be given. Fed.R.Bankr.P. 2002(a)(5); L.B.R. 319(c). In this situation, no notice of modification was provided to parties in interest or this Court.

The Debtor's conduct by (1) not advising the Court or parties in interest of the execution of the Manion Deeds of Trust— which effectively defeated the surrender provisions of the plan—and (2) not modifying or amending the Amended Chapter 13 Plan to evidence that the Debtor would *not* be surrendering the property, evidences an intent to deceive Plaintiff and this Court. Furthermore, Courts have held that when debtors propose to surrender property constituting the Debtor's principal residence which has been destroyed or damaged post-petition, surrender of the property will not be permitted because the modification alters the rights of the holder of the secured claim. *In re Starnes,* 208 B.R. 688, 689–90 (Bankr.E.D.Ark.1997).[15] The procedural gymnastics performed by the Debtor and Manion which thwarted the express plan provisions, and, in turn, ostensibly extinguished the Plaintiff's interest in the Property had the same impact on Plaintiff as if the Property had been destroyed or damaged.

There is no genuine dispute as to the material fact that the Debtor, indeed,

---

**14.** Limited exceptions to 11 U.S.C. § 1322(b)(2) are included in 11 U.S.C. § 1322(c), which provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c).

**15.** In *Starnes,* the Debtors filed a proposed modification of their confirmed Chapter 13 plan surrendering their principal residence after a fire destroyed the debtors' residence which was uninsured. The Court held that the proposed modification was prohibited as it altered the creditor's rights under a note and mortgage on the real property that was the debtors' principal residence. *Id.*

failed to surrender her interests in the real property. Further, it is undisputed that Manion assisted the Debtor in failing to comply with and undermining the explicit terms of the Amended Chapter 13 Plan. Thus, the Court shall grant Summary Judgment the Plaintiff's Second Claim for Relief (enforcement of the Court's Order of Confirmation pursuant to 11 U.S.C. § 105).

### C. Plaintiff's Third Claim for Relief (Avoidance of Post-petition Transfer under 11 U.S.C. § 549(a))

Alternatively, Plaintiff seeks this Court's determination that the Debtor's execution of the Manion Deeds of Trust are voidable as post-petition transactions pursuant to 11 U.S.C. § 549(a).[16] Under 11 U.S.C. § 549, three elements must be shown to permit Plaintiff to avoid the Manion Deeds of Trust: (1) the transfer of the Property was a transfer of "property of the estate"; (2) the transfer occurred after the commencement of the bankruptcy case; and (3) the transfer was not authorized under the Bankruptcy Code or by the Court. Any entity asserting the validity of a transfer under 11 U.S.C. § 549 has the burden of proof. Fed. R.Bankr.P. 6001. Thus, Manion and the Debtor have the burden of proof.

The estate maintained only such interest in the Property as to be reasonably necessary to fulfill the Amended Chapter 13 Plan. This interest was to ensure surrender to the Plaintiff and Norwest. The Property was not surrendered, instead the Property was encumbered by the Manion Deeds of Trust and subsequently transferred to Dilday. In complete disregard of the Amended Chapter 13 Plan, Debtor and Manion manipulated and contorted the foreclosure laws of Colorado and seemingly terminated the Plaintiff's interest in the Property. Therefore, encumbrance of the Property by the Manion Deeds of Trust was a transfer of "property of the estate." See discussion supra Section IV(B)(1). Likewise, once the Debtor received funds for the Manion Deeds of Trust—instead of effectuating a surrender of the Property— those funds, in accordance with 11 U.S.C. § 1306(a)(1), became property of the estate.

Moreover, the second and third elements of 11 U.S.C. § 549(a) are also met. It is not contested that the transfer (i.e. the execution of the Manion Deeds of Trust) occurred after the commencement of the case. Further, the Debtor's execution of the Manion Deeds of Trust and modification of the Amended Chapter 13 Plan post-confirmation were not authorized by the Code or this Court. As a result, the Manion Deeds of Trust are void pursuant to 11 U.S.C. § 549(a).

### G. Contempt Sanctions against Vitt

Plaintiff further requests, under its Fourth Claim for Relief, "appropriate sanctions against Debtor, including, but not limited to, an award of attorney

---

**16.** Defendant has previously argued that Plaintiff lacks standing to avoid transfers under 11 U.S.C. § 549. This issue was addressed on at least two prior occasions. In the adversary proceeding styled: *Providian National Bank v. Taina Lee Vitt and Julie Manion*, Adversary Proceeding No. 98–1570, the Honorable Patricia Ann Clark, in her June 16, 1999 Order granting the dismissal of the adversary proceeding, held that "an individual creditor may maintain an avoidance action under Section 549 on behalf of the trustee or debtor-in-possession after seeking authorization from the bankruptcy court in the underlying case by demonstrating the appropriate circumstances for such authorization."

Thereafter, Plaintiff filed its Motion for Leave to file Complaint to Void Post-petition Transaction on August 5, 1999. On August 10, 1999 this Court entered its Order specifically permitting Plaintiff to pursue a Complaint against Defendant pursuant to 11 U.S.C. § 549. Manion again requested this Court's enter an Order holding that the Plaintiff lacks standing to avoid transfers pursuant to 11 U.S.C. § 549 in Manion's Motion for Summary Judgment and/or Motion for Discretionary Abstention filed March 6, 2000. This Motion was subsequently denied by this Court's Order dated April 4, 2000.

fees to Plaintiff for prosecuting this action." It is unclear whether the Plaintiff seeks contempt sanctions pursuant to Fed. R.Bankr.P. 9020 or under this Court's inherent powers granted by virtue of 11 U.S.C. § 105(a). This Court believes that it need not resort to Rule 9020 as sanctions may be imposed pursuant to 11 U.S.C. § 105(a). *See e.g. In re Aspen Limousine Service, Inc.*, 198 B.R. 341, 344 (D.Colo.1996).[17] The Tenth Circuit has recognized that Section 105(a) is intended to empower bankruptcy courts with the inherent powers imbued in the federal district court to sanction conduct abusive of judicial process. *In re Courtesy Inns*, 40 F.3d 1084, 1089 (10th Cir.1994); *In re Skinner*, 917 F.2d 444, 447 (10th Cir.1990). Specifically, Section 105(a) enables this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Furthermore, this Court can take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir.1996) (bankruptcy courts have the inherent power to sanction vexatious and egregious conduct).

 This Court is charged with the duty to maintain order and ensure that its orders are obeyed. It is critical that debtors and their creditors obey and comply with orders confirming Chapter 13 plans.

Confirmation binds debtors and creditors to the terms thereunder. Here, Debtor did not comply with the surrender provision of her confirmed Chapter 13 Plan—a Plan to which she was bound. Arguably, the Debtor has acted in contempt of this Court, but that requires a showing of some type of "bad-faith" conduct or conduct that is tantamount to "bad-faith." *In re Rimsat*, 212 F.3d 1039, 1045–46 (7th Cir.2000) (a bankruptcy court need not make an explicit finding of "bad-faith"—where conduct is an intentional abuse of the judicial process exercised in an unreasonable and vexatious manner sanctions may be imposed). Thus far, there are no affidavits, or other suggestions, provided to the Court at this time for guidance regarding the issue of contempt, or an appropriate sanction including the amount of attorneys' fees involved in this matter. Therefore, at this time, this Court will deny, without prejudice, the Motion for Summary Judgment on the Fourth Claim for Relief, as it pertains to an appropriate sanction. This Court will, however, conduct an evidentiary hearing regarding Plaintiff's Fourth Claim for Relief at the time previously scheduled for trial for the purpose of determining appropriate sanctions, if any, against Vitt, including, but not limited to, an award of attorney fees to Plaintiff for prosecuting this action

IT IS THEREFORE ORDERED that the Motion for Summary Judgment is hereby GRANTED, IN PART, as to the

---

**17.** In instances where the bankruptcy court sanctions parties pursuant to its inherent authority, its decision is reviewed for an abuse of discretion and its factual findings subject to the clearly erroneous standard. *Id.* Where a court issues its decision under Fed.R.Bankr.P. 9020, the decision is subject to *de novo* review under Fed.R.Bankr.P. 9033. *Id.* Judge Kane, in the *Aspen Limousine* case expressed his concern that the standard of review turned on semantics, not the substance, of the sanctions order. He noted that for all practical purposes, Section 105 and Rule 9020 would achieve the same result. However, the bankruptcy courts would enjoy greater autonomy and less scrutiny on appeal by invoking their inherent authority to sanction under Section 105, rather than the contempt process prescribed by Rule 9020. Here, Plaintiff has sought in its Second Claim for Relief an Order pursuant to Section 105 enforcing the terms of the confirmed Amended Chapter 13 Plan. As this Court has stated previously, the claims for relief are greatly intertwined. Enforcement of the terms of the confirmed Amended Chapter 13 Plan as requested in the Second Claim for Relief also, in this instance, necessitates the imposition of sanctions. Therefore, as this Court is enforcing the terms of the confirmed Amended Chapter 13 Plan pursuant to 11 U.S.C. § 105, so will this Court impose sanctions under 11 U.S.C. § 105(a).

First, Second and Third Claims for Relief. This Court hereby enters declaratory judgment holding that the Manion Deeds of Trust are void, that Plaintiff is the valid holder of a Certificate of Purchase on the property, and that Plaintiff is awarded damages against Manion in the principal amount of $39,221.74, costs of $1,070.45, and interest at the rate of 13.4% per annum from and after August 19, 1998.

IT IS FURTHER ORDERED that the Motion for Summary Judgment is hereby DENIED, without prejudice, as to Plaintiff's Fourth Claim for Relief and this Court will hold an evidentiary hearing regarding the issue of contempt and sanctions, if any.

IT IS FURTHER ORDERED that this Court will conduct an evidentiary hearing regarding Plaintiff's Fourth Claim for Relief on Thursday, July 20, 2000 at 9:00 a.m. in Courtroom E, United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202–2508 for the purpose of determining appropriate sanctions, if any, against Vitt, including, but not limited to, an award of attorney fees to Plaintiff for prosecuting this action.